Filed 10/4/22 Jessica M. v. Emmanuel G. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JESSICA M., | F083315 |
| Respondent, | (Super. Ct. No. 20FL-01343) |
| v. | |
| EMMANUEL G., | **OPINION** |
| Appellant. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County. Shelly Seymour, Judge.

Emmanuel G., in pro. per., for Defendant and Appellant.

No response for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Snauffer, J. and DeSantos, J.

Appellant Emmanuel G. challenges the decision of the trial court to award sole custody of his son to the child's mother, Jessica M. (mother), and to deny him visitation. We have reviewed the entire record and each argument raised by appellant. We conclude the order entered by the trial court is supported by the record and consistent with the best interest of the child. We affirm the judgment entered below.

### FACTUAL AND PROCEDURAL SUMMARY

Appellant and mother are the parents of a son (son) who was born in February 2014. When one of mother's older children from a prior relationship was hospitalized with an aneurism in 2018, requiring her constant presence at the hospital, mother sent son to live with appellant. Once mother was able to bring her older son home, the parties shared time with son amicably through 2019, even though mother moved to Chowchilla, and appellant moved son to a private school. In July 2019, mother filed a police report against appellant. Starting in March 2020, appellant only allowed mother to have access to son on the weekends. Sometime after March 2020, however, appellant would not allow mother to visit son due to appellant believing that mother had received COVID-19 stimulus funds for son. Also, during this period, appellant started insisting mother's boyfriend should not be around their son.

In July 2020, appellant submitted a "Responsive Declaration to Request for Order," apparently addressing a request from son's mother for sole custody. In his declaration, appellant admits the existence of a "domestic violence restraining/protective order[],"[1] and that he opposed mother's request for sole custody of son. Appellant further expresses his belief son's mother sought sole custody because he refused to allow her to visit with son until she paid appellant stimulus money he believed she received for son.

---

[1] This order will hereinafter be referred to as a "protective order."

2.

At the August 2020 hearing addressing custody, appellant expressed his belief the mediator assigned to the case was biased because of his perception she was advocating for mother. The mediator's report summarized interviews with both parents, detailing their respective allegations of abuse, and concluded with a recommendation mother retain primary physical custody and that appellant have son most weekends. After listening to appellant's objections to the mediator's report, the court cited the pending criminal case and the existence of the protective order requiring the court to apply the Family Code section 3044[2] presumption, and gave mother sole legal and physical custody. The court noted that the issue would be revisited in November once the criminal case involving appellant was resolved.

In September 2020, appellant sought a temporary restraining order against mother alleging she was responsible for an injury to son's arm and was not protecting son from another sibling in the house. This request was denied.

As a follow up to the August hearing, and in response to new complaints made by appellant, a hearing was held in October 2020. The court noted the allegations raised by appellant of abuse by mother had been investigated by child protective services (CPS) in Madera County where mother was now living and found to be "inconclusive." The trial court reviewed the CPS records and concluded mother's home did not pose a danger to son. At the end of this hearing, the court directed mother to get son into counseling before the next hearing so a report could be prepared to assist in deciding the custody issue. Wanting to see the report from son's counselor, and still hoping appellant's criminal matter would be resolved, the court continued the matter to December 2020.

During the next hearing held in early December 2020, the court ordered the parties into mediation. The court also reminded mother of the need for son to continue to engage in counseling sessions as a report was needed before it could make any further orders.

---

[2] All further statutory references are to the Family Code, unless otherwise specified.

3.

When the parties returned later that same month, appellant lodged another complaint about the mediator, disputing her conclusion son was safe in mother's home. The court then continued the matter to January to give appellant additional time to review the mediator's report.

Due to the ongoing nature of all these hearings, and because of the continuing strife between the parties, the court appointed an attorney for son in January 2021. In response to appellant's repeated questions about the safety of mother's home, the court reminded appellant there were numerous "mandatory reporter[s]" involved with son's custody case and they had not felt the need to report the existence of any dangers posed in mother's home. However, in an apparent exercise of caution, the court specifically directed son's attorney to explore the safety concerns raised by both parties.

During an April 2021 hearing, the attorney appointed to represent son presented his report. Appellant did not attend this hearing. Son's attorney informed the court that after the report was prepared, he learned appellant was now facing new charges for kidnapping. He also reported that the prior criminal matter involving domestic violence resulted in a conviction. However, son's attorney was especially concerned with a video interview appellant conducted with son. In the lengthy interview, which appellant submitted as evidence to the court, appellant asks son to recount various events that occurred at mother's home, believing it showed some form of abuse. The court expressed its belief that the interview was troubling, especially with respect to the questions asked by appellant. Due to these concerns about the interview and the updated report from son's counselor who expressed concerns about appellant's attempts to "coach" son on how to respond to questions, the court decided supervised visits would now be necessary. The trial court then continued the matter to August.

During the August 2021 hearing, the court was informed appellant had not participated in any supervised visits. Appellant renewed his request for custody, again citing his concerns about abuse in mother's home. Eventually, appellant stated he would

4.

not participate in supervised visits and left the courtroom after being reminded that CPS had not found abuse in mother's home. The court then ordered sole legal and physical custody of son to mother, and no visitation for appellant. This appeal followed. Mother has not filed a response to the opening brief.

## DISCUSSION

Appellant challenges the family court's decision to award sole custody of son to mother and no visitation as not furthering the best interest of his son. As he did in the trial court, in this appeal appellant cites to numerous complaints he filed with CPS as supporting his argument the trial court below abused its discretion in awarding mother sole custody. While we must consider whether the trial court abused its discretion either by misapplying the law or entering an order that lacks substantial evidence, only when there are exceptional circumstances should we actually decide who should be awarded custody. (See *Guardianship of Vaughan* (2012) 207 Cal.App.4th 1055, 1067.)

## I.     The Applicable Standard of Review

The Family Code vests a trial court with wide discretion to determine custody and visitation in a manner that serves the best interest of the child. (§§ 3020, subd. (a), 3040, subds. (a), (d).) The trial court's decision will be upheld on appeal if it reasonably advances the child's best interest. (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1087.) When considering the best interest of the child, the court can consider any relevant factors, including the health, safety, and welfare of the child. (§§ 3011, subd. (a)(1), 3020, subds. (a), (c).) However, if the person seeking custody has perpetrated domestic violence within the past five years against, among others, the other party or the child, there is a rebuttable presumption that a sole or joint physical or legal custody award to the perpetrator would be detrimental to the child's best interest. (§ 3044, subd. (a).) While this presumption is always rebuttable, the presumption may only be rebutted by a preponderance of the evidence. (*Christina L. v. Chauncey B.* (2014) 229 Cal.App.4th 731, 736, citing § 3044, subd. (a).)

In *Noble v. Superior Court* (2021) 71 Cal.App.5th 567, this court recently addressed the issue of domestic violence claims when custody is at issue. In *Noble*, the family court entered an interim order granting father joint legal and physical custody, even though it was made aware of a domestic violence restraining order that had been obtained in Utah on behalf of mother. (*Id.* at p. 571.) The *Noble* court emphasized the importance of applying the presumption required by § 3044, when *any court* has concluded a person seeking custody or visitation has " 'perpetrated domestic violence within the previous five years against the other party seeking custody of the child.' " (*Noble*, at p. 577.)

The presumption set forth in section 3044, subdivision (a), is a rebuttable presumption, even if an allegation of domestic violence leads to a conviction. (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 28.) To overcome the presumption, a court must make two specific findings. First, the court must find awarding custody or visitation to the person accused of domestic violence "is in the best interest of the child." (§ 3044, subd. (b)(1).)) Second, the court must also find that the factors specified in section 3044, subdivision (b)(2), on balance, support the goals of protecting the child's health, safety, and welfare, and promote the public policy that children should have continuing relationships with both parents. (§ 3020, subds. (a), (b).) The factors specifically address whether the perpetrator of domestic violence has made efforts to resolve conduct leading to the domestic violence, such as behavioral issues or substance abuse. (§ 3044, subd. (b)(2)(A–G).)

Again, "[w]e review custody and visitation orders for an abuse of discretion, and apply the substantial evidence standard to the court's factual findings. [Citation.] A court abuses its discretion in making a child custody order if there is no reasonable basis on which it could conclude that its decision advanced the best interests of the child. [Citation.] A court also abuses its discretion *if it applies improper criteria or makes incorrect legal assumptions*." (*Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497.)

6.

## II.     The Order Granting Mother Sole Custody Is Supported by the Record

In this case, appellant acknowledged a domestic violence protective order existed. The order was issued on behalf of mother before appellant filed this action.[3]  The trial court noted the order was still active and prohibited communication and contact between appellant and mother.  The court then stated:

> "[W]ith the criminal protective order in place, the law says she's to have legal, physical custody of your children, unless the Court's got evidence to overcome the presumption that it's not in their best interest that she have legal, physical custody."

However, even though the section 3044 rebuttable presumption was recognized, the court allowed appellant to have his son every other week until school started while the matter was pending, if the exchanges could be arranged in a manner that did not require appellant and mother to come into contact.  Once school started, appellant would then have his son every weekend, except for the second weekend of each month.  The court stated its intent to revisit the issue of custody after the criminal matter involving the protective order was resolved.

The record does demonstrate appellant was making some effort to comply with the factors laid out in section 3044, subdivision (b)(2), by obtaining appropriate treatment or attending parenting classes.  However, instead of trying to address all the factors laid out in section 3044, which would help him to rebut the presumption that existed in this case, appellant continued to highlight complaints he made to various agencies and the court alleging mother's conduct toward son and the safety of her home were not in the best interest of their son.  This conduct continued even after the complaints lodged by appellant alleging abuse in mother's home were found to be without merit.

---

**3**     A copy of the protective order is not part of this court's file.  Appellant does not challenge its existence or applicability here.

Furthermore, in later hearings, appellant did little to rebut the presumption favoring an award of sole custody to mother. For instance, while this matter was pending, appellant conducted a video interview of son that the attorney for son, the counselor assigned to the case, and the trial court found troubling. During this time, appellant was also convicted of the charge of domestic violence and was now facing new charges for kidnapping. Finally, appellant refused to participate in supervised visits with son and left the courtroom while the issue of custody and visitation were still being considered. On balance, these actions do not benefit son or seem to be taken in his best interest.

Again, we are guided by what is in the best interest of son. (§§ 3020, 3044.) Based on our review of the entire record, we find the rebuttable presumption imposed by section 3044 was not overcome. We further find there was no abuse of discretion by the trial court when awarding sole custody to mother, and substantial evidence supports the order entered by the court.

## DISPOSITION

The judgment is affirmed. No costs are awarded.